UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESHAWN REED and
MARVIN REED, individually;

      Plaintiffs,

-v-

No.
Hon.

CITY OF ECORSE, a Municipal corporation;
ALVIN DEMMINGS, in his individual capacity;
JOHN ANDERSON, in his individual capacity;
Darren Findling, Personal Representative of the
ESTATE OF EDGAR WATKINS, Deceased,
in his individual capacity; VICTOR DeLEON,
in his individual capacity; all jointly and severally;

      Defendants.

_____

**JULES B. OLSMAN (P28958)**
**WOLFGANG MUELLER (P43728)**
**DONNA M. MacKENZIE (P62979)**
Olsman, Mueller, Wallace & MacKenzie, P.C.
Attorneys for Plaintiffs
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300
wmueller@olsmanlaw.com
jbolsman@olsmanlaw.com
dmackenzie@olsmanlaw.com
_____

**COMPLAINT AND JURY DEMAND**

      NOW COME the Plaintiffs, DESHAWN REED and MARVIN REED, individually, by and through their attorneys, OLSMAN, MUELLER, WALLACE & MacKENZIE, P.C., by JULES B. OLSMAN and WOLFGANG MUELLER, and do hereby complain against the Defendants in this civil action, stating unto this Court as follows:

      1.      This is an action for damages brought pursuant to 42 USC §§1983 and 1998, the

Fourth, Sixth and Fourteenth Amendments to the United States Constitution and under the statutory and common law of the State of Michigan against the above-named individual Defendants, in their individual capacities, and the CITY OF ECORSE.  Jurisdiction is founded upon 28 USC §1331 and 28 USC §1343 and upon the pendent jurisdiction of this Court to adjudicate claims arising under Michigan law.

2. Venue is proper based on the situs of the incident, which occurred in the City of Ecorse.

3. That at all pertinent times Plaintiffs, DESHAWN REED and MARVIN REED, were residents of the City of Ecorse, State of Michigan.

4. That the Defendant, ALVIN DEMMINGS, is a citizen of the State of Michigan and, at all times relevant hereto, was employed as a police officer for the Ecorse Police Department, a department of the CITY OF ECORSE, a Municipal corporation.

5. That the Defendant, JOHN ANDERSON, is a citizen of the State of Michigan and, at all times relevant hereto, was employed as a police officer for the Ecorse Police Department, a department of the CITY OF ECORSE, a Municipal corporation.

6. That the Defendant, VICTOR DeLEON, is a citizen of the State of Michigan and, at all times relevant hereto, was employed as a police officer for the Ecorse Police Department, a department of the CITY OF ECORSE, a Municipal corporation.

7. That the Defendant, Darren Findling, is the Personal representative of the Estate of EDGAR WATKINS (hereinafter "WATKINS").  Defendant's decedent, EDGAR WATKINS, was a citizen of the State of Michigan and, at all times relevant hereto, was employed as a police officer for the Ecorse Police Department, a department of the CITY OF ECORSE, a Municipal

corporation.

8. That at the time of the events alleged in this Complaint, the Defendant, ALVIN DEMMINGS, was at all times acting in his individual capacity and within the scope of his employment as a police officer employed by the CITY OF ECORSE and under color of law.

9. That at the time of the events alleged in this Complaint, the Defendant, JOHN ANDERSON, was at all times acting in his individual capacity and within the scope of his employment as a police officer employed by the CITY OF ECORSE and under color of law.

10. Defendant, JOHN ANDERSON, a sergeant with the Ecorse Police Department, was the officer-in-charge ("OIC") of the Gholston shooting investigation.

11. That at the time of the events alleged in this Complaint, the Defendant, VICTOR DeLEON, was at all times acting in his individual capacity and within the scope of his employment as a police officer employed by the CITY OF ECORSE and under color of law.

12. Defendant, VICTOR DeLEON, took over the investigation of the Gholston shooting in March, 2001, when Defendant, ANDERSON, retired.

13. That at the time of the events alleged in this Complaint, the Defendant's decedent, EDGAR WATKINS, was at all times acting in his individual capacity and within the scope of his employment as a police officer employed by the CITY OF ECORSE and under color of law.

14. That at all times relevant hereto, the Defendant, CITY OF ECORSE, a Municipal corporation, was the employer of Defendants, DEMMINGS, ANDERSON, DeLEON and WATKINS.

**GENERAL ALLEGATIONS**

15. Plaintiffs incorporate by reference Paragraphs 1 through 14 as if fully stated

herein.

16.     On March 12, 2000, Shannon Gholston was shot in the neck while he was turning his car through the intersection of Salliotte and Ninth Street in the City of Ecorse, Michigan. The shooting left him a quadriplegic.

17.     Due to the shooting and immediate paralyzation, Gholston lost control of his vehicle, which coasted and came to rest by a gate on a mound of snow and dirt. Marrio Jones and Raphael Parks approached Gholston's car and opened the door to speak to him. They both asked Gholston if he knew who shot him, and Gholston shook his head *"No"*.

18.     Gholston was taken via EMS to Henry Ford Hospital - Wyandotte. The ambulance was escorted by Ecorse Police Officer Geoffrey Howard.

19.     While at Henry Ford Hospital, Shannon Gholston was visited by a long-time friend, Robert Thomas, who was employed as a police officer for the City of Detroit. He had been in uniform on his way to work when he heard that his friend, Mr. Gholston, had been shot and was at Henry Ford Hospital.

20.     While at Henry Ford Hospital, before any family members spoke to Shannon Gholston, Robert Thomas attempted to communicate with Gholston, but Gholston was unable to speak. Thomas initiated a system of communication in which he asked Gholston if he knew who shot him. Gholston was to respond by blinking once for "yes" and twice for "no." Officer Thomas asked Gholston if he saw who shot him. Gholston blinked twice to indicate *"no"*.

21.     As Officer Thomas was leaving the hospital room, he ran into Ecorse Sgt. Edgar Watkins, who he had known since Thomas was a boy, as Watkins dated Thomas' mother for many years. With Watkins was another Ecorse Police Officer. Officer Thomas told Watkins and

the other officer of his questioning of Shannon Gholston and the fact that Gholston indicated he didn't know who shot him.

22. Defendant, John Anderson's report of his interview with Shannon Gholston, beginning at 4:20 p.m. on March 12, 2000, after family members had spoken to Shannon Gholston, indicated that Shannon Gholston positively identified Plaintiff, DeShawn Reed, as being the person who shot him, and Plaintiff, Marvin Reed, as being the driver of the vehicle.

23. Sgt. Edgar Watkins' report of his investigation indicates that he and Defendant, Anderson, interviewed Shannon Gholston on March 12, 2000, at approximately 4:20 p.m., in the presence of Detroit Police Officer Robert Thomas. However, his report doesn't mention the fact that Gholston communicated that he did not know who shot him.

24. During the course of the police investigation and interviews with Shannon Gholston, Defendant, Anderson, noted that Gholston identified Brian Borders as having been in the back of the vehicle driven by Marvin Reed at the time of Gholston's shooting. Brian Borders was the nephew of Defendant, Alvin Demmings, a lieutenant with the Ecorse Police Department. Demmings' brother, Brian Borders' father, worked for the Ecorse District Court as a Court officer.

25. Brian Borders was interviewed by Ecorse Police and denied that he participated in the shooting of Shannon Gholston. Based on that denial and the fact that Sgt. Anderson thought that Shannon Gholston "hesitated" a bit before identifying Brian Borders through the "blink" system of communication, Brian Borders was never charged with a crime in connection with the Gholston shooting.

26. In May, 2000, Defendants, Demmings, Anderson, DeLeon, and Watkins, sent an

informant to DeShawn Reed's house to attempt to get Reed to implicate himself in the Gholston shooting. The informant, who had outstanding charges against him in the City of Ecorse, was promised that the charges would "go away" if he was successful in obtaining some type of admission from DeShawn Reed. The informant first went to DeShawn Reed's house asking Reed whether he shot Shannon Gholston like the police said. Reed emphatically denied shooting anyone. The informant then left the house and returned several minutes later, after having talked to Sgt. Watkins. Watkins instructed the informant to return to Reed's house to try to buy drugs from Reed. The informant then attempted to buy drugs from DeShawn Reed and was told by Reed that he didn't sell drugs.

27. When the informant left DeShawn Reed's house a second time, Reed followed him outside. DeShawn Reed and his brother Tienail Reed saw Sgt. Watkins parked at the end of the street. With their vehicle, the Reeds pulled up to Watkin's police car and asked why Watkins was trying to set up DeShawn Reed. Watkins simply laughed and said he happened to be in the neighborhood keeping an eye out on some Mexicans who lived on the same block as DeShawn Reed. Watkins then drove away, laughing.

28. The unsuccessful attempt to send an informant to DeShawn Reed's house to obtain an admission of guilt was material exculpatory evidence that was apparent to the individual Ecorse police defendants. The information was never turned over to the Wayne County Prosecutor's Office at any time during the case.

29. On March 5, 2001, Wayne County Deputy, Paul Jones, contacted the Ecorse Police Department and spoke with Defendant, Demmings, who was in charge of the Ecorse Police Department's Detective Bureau. Jones informed Lt. Demmings that Jones's brother-in-

law, Alfred Dalton, contacted Jones two days earlier and informed him that the brother-in-law's daughter, Anitra Dalton, was the former girlfriend of Tyrone Allen.  Ms. Dalton informed her father that Allen confessed that he shot Shannon Gholston on the day of the shooting, March 12, 2000.  Jones also informed Lt. Demmings that Tyrone Allen was deceased.  Lt. Demmings informed Deputy Jones that *"he would look into the matter further, but felt that they had the right suspect and would continue working towards prosecuting him."*

30. Lt. Demmings never informed any of the police officers involved in the Gholston shooting case, including Defendants, Anderson and DeLeon, that he had such a conversation.

31. On or about March 24, 2000, Plaintiffs were arrested by the Ecorse police and charged with the shooting of Shannon Gholston.

32. The communication by Shannon Gholston to Officer Robert Thomas indicating Gholston didn't know who shot him was known to the Ecorse Police Officers, including Sgt. Edgar Watkins and Defendant, John Anderson.  However, the information, which was apparent exculpatory evidence, was not provided to the Wayne County Prosecutor's Office by the Defendants.

33. Defendants, Moore and DeLeon, met and conversed on more than one occasion before and during the criminal trial to discuss the evidence, both inculpatory and exculpatory, as well as witnesses and strategy.

34. Despite access to the police file and police witnesses on the case, Defendants intentionally failed to disclose to the Wayne County Prosecutor's Office information regarding Robert Thomas' information that Shannon Gholston communicated to him before any family members saw Gholston, that he did not know who shot him, as well as the Ecorse Department's

unsuccessful attempt to send in an informant to try to have Deshawn Reed incriminate himself, and Defendant, Demmings' telephone conversation with Paul Jones regarding Tyrone Allen's confession to the shooting.

35. Defendant, Victor DeLeon, was in the court throughout the criminal trial of DeShawn Reed and Marvin Reed, which resulted in a guilty verdict as a result of a bench trial on August 27, 2001.

36. Shannon Gholston was the only witness at trial who identified DeShawn Reed as the shooter and Marvin Reed as being the driver.

37. Judge Michael Hathaway's opinion regarding the verdict relied exclusively on Shannon Gholston's identification of Plaintiffs as the reason for the conviction. After having analyzed the testimony of the witnesses and commenting on their credibility, Judge Hathaway stated: *"And so I'm sort of thrown back on the testimony of really the only witness in this case who is directly involved in the incident whose testimony has any credibility to me at all and which rings true, very resoundingly true, and that is the testimony of the victim himself.*

*"I mean he was clear. He was unshaken and unmoved in his testimony that it was Deshawn Reed that fired the weapon at him and inflicted this tragic injury and Marvin Reed was driving the car.*

*"I cannot imagine why someone with an injury like this would come into court and deliberately or even negligently misrepresent who inflicted that injury. I mean that is beyond the realm of my human experience why he would do that."*

38. Shannon Gholston later recanted his prior testimony because he *"wanted somebody to pay for it, alright, what happened to me."*

39. On or about July, 31, 2009, the Wayne County Prosecutor's office dismissed all charges against Plaintiffs.

40. That due to the conduct of Defendants, as set forth below, DeShawn Reed and Marvin Reed, have suffered the following injuries and damages:

    A. Being wrongfully incarcerated and imprisoned for a period of over eight years;

    B. Severe emotional distress for the period from their arrest to the present;

    C. Physical manifestations of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

    D. Fright, shock, indignity, humiliation and embarrassment of being wrongfully charged and imprisoned;

    E. Loss of enjoyment of daily activities;

    F. Loss of employment opportunity;

    G. Payment of significant attorney fees;

    H. Many of Plaintiffs' injuries and damages are likely to be permanent;

    I. Other damages which may be revealed through discovery.

## COUNT I

### CONSTITUTIONAL VIOLATIONS BY ALL DEFENDANTS

41. Plaintiffs incorporate by reference Paragraphs 1 through 40 as if fully stated herein.

42. Defendants, Anderson, Demmings, Watkins and DeLeon were under an absolute duty to disclose to the prosecutors all exculpatory evidence where its value was apparent, including, but not limited to, the evidence set forth above.

43. Defendants, acting under color of law, violated DeShawn Reed and Marvin Reed's constitutionally-protected rights, including their right to liberty protected by the Due Process clause of the Fourteenth Amendment to the U. S. Constitution, as well as their right to be free from unlawful detention without probable cause, guaranteed by the Fourth Amendment, and their right to a fair trial, guaranteed by the Sixth Amendment, by the following conduct:

   A. Defendants, Anderson, Demmings, Watkins and DeLeon deliberately and consciously failed to disclose exculpatory evidence in their possession to the prosecutors, before the Preliminary Exam and trial, which was apparent exculpatory evidence, pursuant to *Brady v Maryland,* 373 US 83 (1963), which would have resulted in a finding of lack of probable cause at the preliminary exam or an acquittal at trial;

   B. Defendant, Anderson, deliberately and knowingly supplied false information and omitted information which showed a reckless disregard for the truth in requesting an arrest warrant which was material to a finding of probable cause;

   C. The individual Defendants, conspired to, and did, conceal the above-referenced material exculpatory evidence, from DeShawn Reed and Marvin Reed's attorneys throughout the course of the criminal proceedings, with the common objective being to deprive Plaintiffs of their constitutionally guaranteed rights set forth above, which caused Plaintiffs' injuries;

   D. Defendant, City of Ecorse, created policies, practices and customs, including a failure to provide adequate training to its police officers, including the individual police officer Defendants, regarding the government's constitutional obligation to turn over apparent exculpatory evidence to the prosecutors, which demonstrated "deliberate indifference" to the constitutional rights of its citizens, and was the moving force behind the individual police Defendants' violations of Plaintiffs' constitutional rights;

   E. Other acts of constitutional violations that will be discovered through the process of discovery.

44. The constitutional rights which were violated by Defendants, as set forth above,

were clearly established before March 12, 2000.

45. As a direct and proximate result of the Defendants' willful violation of DeShawn Reed and Marvin Reed's constitutionally protected rights, Plaintiffs were detained without probable cause, charged with crimes they did not commit, and wrongfully convicted and imprisoned, causing them to suffer the injuries and damages set forth above.

WHEREFORE, Plaintiffs, DeShawn Reed and Marvin Reed, pray for such compensatory damages as are available pursuant to federal law.  Plaintiffs further seek punitive damages pursuant to 42 USC §1983 as to the individual Defendants, jointly and severally, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

## COUNT II

### MALICIOUS PROSECUTION BY DEFENDANT  JOHN ANDERSON

46. Plaintiffs incorporate by reference Paragraphs 1 through 45 as if fully stated herein.

47. Defendant, Anderson, initiated and continued criminal prosecution against Plaintiffs in state court.

48. The criminal proceedings ultimately terminated in Plaintiffs' favor with a dismissal of the charges in state court.

49. That Defendant who initiated and carried out the prosecution, deliberately, and with reckless disregard for the truth, withheld material and apparent exculpatory evidence from the Prosecutor and Plaintiffs' criminal defense counsel, that the police knew that Shannon Gholston had acknowledged to his good friend, Robert Thomas, City of Detroit police officer, on the date of the shooting, that he didn't know who shot him.

50.     The prosecution was undertaken with malice and to protect Brian Borders from being charged, as he was the nephew of Defendant, Demmings, and had been clearly implicated in the shooting by Shannon Gholston, as well as for reasons which will become evident through discovery. The prosecution was not undertaken with the intention of bringing Plaintiffs to justice for having committed the alleged murder.

51.     As a direct and proximate result of Defendant's malicious prosecution, Plaintiffs were charged and convicted for two crimes they did not commit, causing them to suffer the injuries and damages set forth above.

WHEREFORE, Plaintiffs, DeShawn Reed and Marvin Reed, pray for such compensatory and exemplary damages as are available pursuant to the common-law of the State of Michigan, as well as treble damages pursuant to MCL 600.2907, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

## COUNT III

### GROSS NEGLIGENCE OF DEFENDANTS ANDERSON, DEMMINGS AND DeLEON

52.     Plaintiffs incorporate by reference Paragraphs 1 through 51 as if fully stated herein.

53.     Defendants, Anderson, Demmings and DeLeon, were at all times, under a duty to act reasonably to avoid causing injury with respect to DeShawn Reed and Marvin Reed's constitutional rights in their criminal case.

54.     Defendants' conduct, by deliberately concealing and failing to disclose the above-described material and apparent exculpatory evidence, breached that duty and demonstrated


"conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."

55. Defendants' conduct constitutes gross negligence as defined in MCL §691.1407(7)(a) and is an exception to the defense of governmental immunity.

56. Each individual Defendant's conduct was the proximate cause of Plaintiffs' injuries and damages set forth above.

WHEREFORE, Plaintiffs, DeShawn Reed and Marvin Reed, pray for such compensatory and exemplary damages as are available pursuant to the common-law of the State of Michigan, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY DEFENDANTS ANDERSON, DEMMINGS AND DeLEON

57. Plaintiffs incorporate by reference Paragraphs 1 through 56 as if fully stated herein.

58. Defendants, Anderson, Demmings, and DeLeon, intentionally withheld apparent exculpatory evidence from the Prosecutor so that it would not be turned over to DeShawn Reed and Marvin Reed's defense attorneys in their criminal case.

59. Defendants' conduct, by intentionally and deliberately concealing and failing to disclose the above-described material and apparent exculpatory evidence, went beyond all possible bounds of decency and was intended to, and did, cause emotional distress.

60. Defendants' conduct would be regarded as atrocious and utterly intolerable in a

civilized community.

     61.    Each individual Defendant's conduct was a proximate cause of Plaintiffs' injuries and damages set forth above.

     WHEREFORE, Plaintiffs, DeShawn Reed and Marvin Reed, pray for such compensatory and exemplary damages as are available pursuant to the common-law of the State of Michigan, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

                              OLSMAN, MUELLER, WALLACE
                              & MacKENZIE, P.C.

                              s/Wolfgang Mueller
                              Wolfgang Mueller (P43728)
                              wmueller@olsmanlaw.com
                              Jules B. Olsman (P28958)
                              jbolsman@olsmanlaw.com
                              Donna MacKenzie (P62979)
                              dmackenzie@olsmanlaw.com
                              Attorneys for Plaintiffs
                              2684 West Eleven Mile Road
                              Berkley, MI 48072
                              (248) 591-2300

Dated: March 4, 2010

**JURY DEMAND**

Plaintiffs, DeShawn Reed and Marvin Reed, by and through their attorneys, OLSMAN, MUELLER, WALLACE & MacKENZIE, P.C., by JULES B. OLSMAN and WOLFGANG MUELLER, demands a jury trial in the instant matter.

                                          OLSMAN, MUELLER, WALLACE
                                          & MacKENZIE, P.C.

                                          s/Wolfgang Mueller
                                          Wolfgang Mueller (P43728)
                                          wmueller@olsmanlaw.com
                                          Jules B. Olsman (P28958)
                                          jbolsman@olsmanlaw.com
                                          Donna MacKenzie (P62979)
                                          dmackenzie@olsmanlaw.com
                                          Attorneys for Plaintiffs
                                          2684 West Eleven Mile Road
                                          Berkley, MI 48072
                                          (248) 591-2300

Dated: March 4, 2010